# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| **BRENT ANDREWS, and** ) <br> **ERNEST REZENDES,** ) <br> **Plaintiffs,** ) <br> ) <br> v. ) <br> ) <br> ) <br> **WEATHERPROOFING TECHNOLOGIES, INC.,** ) <br> **Defendant.** ) | **Civ. Act. No. 15-11873-TSH** |

## MEMORANDUM OF DECISION AND ORDER
September  28, 2017

**HILLMAN, D.J.**

## Introduction

Brent Andrews ("Andrews"), and Ernest Rezendes ("Rezendes", and, together with Andrews "Plaintiffs") filed suit against Weatherproofing Technologies, Inc. ("WTI" or "Defendant") alleging: statutory claims for violation of the straight wage provisions of the Massachusetts Wage Act,  Mass.Gen.L. ch. 149, §§ 148, 150 ("MWA"), the overtime compensation provisions of the Massachusetts Fair Minimum Wage Act , Mass.Gen.L. ch. 151, §1A ("MFMAW") and Fair Labor Standards Act, 29 U.S.C. §207 ("FLSA"), and the prevailing wage provision of the Massachusetts Wage Act, 149, §§26 and 27 ("MWAPW") ; and

Massachusetts common law claims for breach of the covenant of good faith and fair dealing, breach of contract, and unjust enrichment.

This Memorandum of Decision and Order addresses Defendant's Motion For Summary Judgment (Docket No. 36). For the reasons set forth below, that motion is *granted*, in part, and *denied*, in part.

## **Standard of Review**

Summary Judgment is appropriate where, "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Carroll v. Xerox Corp*., 294 F.3d 231, 236 (1ˢᵗ Cir. 2002) (citing Fed. R. Civ. P. 56(c)). "'A "genuine" issue is one that could be resolved in favor of either party, and a "material fact" is one that has the potential of affecting the outcome of the case.'" *Sensing v. Outback Steakhouse of Florida, LLC*, 575 F.3d 145, 152 (1ˢᵗ Cir. 2009) (quoting *Calero-Cerezo v. U.S. Dep't. of Justice*, 355 F.3d 6, 19 (1ˢᵗ Cir. 2004)).

When considering a motion for summary judgment, the Court construes the record in the light most favorable to the nonmoving party and makes all reasonable inferences in favor thereof. *Sensing,* 575 F.3d at 153. The moving party bears the burden to demonstrate the absence of a genuine issue of material fact within the record. *Id.,* at 152. "'Once the moving party has pointed to the absence of adequate evidence supporting the nonmoving party's case, the nonmoving party must come forward with facts that show a genuine issue for trial.'" *Id.* (citation to quoted case omitted). "'[T]he nonmoving party "may not rest upon mere allegations or denials of the [movant's] pleading, but must set forth specific facts showing that there is a genuine issue of material fact as to each issue upon which [s/he] would bear the ultimate burden

of proof at trial." *Id.* (citation to quoted case omitted).  The nonmoving party cannot rely on

"conclusory allegations" or "improbable inferences". *Id.*  (citation to quoted case omitted).

"'The test is whether, as to each essential element, there is "sufficient evidence favoring the

nonmoving party for a jury to return a verdict for that party." ' " *Id.* (citation to quoted case

omitted).

### Findings of Fact

### WTI's Motion to Strike

WTI filed a motion to strike Plaintiffs' statement of material facts two days before the

hearing on its motion for summary judgment.  At the hearing, WTI's counsel briefly mentioned

that to support Plaintiffs' statement of material facts, which the Plaintiffs allege are undisputed,

they cite to the deposition of Bernard Honeywell, who supervised Andrews for a time. *See  Pls'*

*Resp. to Def's Statement of Undisputed Material Facts* (Docket No. 41)("*Pls' Disputed Facts*

*and Additional Factual Assertions"*), at pp. 25-32; *Pls' Opp. And Mem. Of L. in Opp. To Def's*

*Mot. For Sum.J.* (Docket No. 40), at  *Ex. 3* (the "Honeywell Deposition")*.* The Honeywell

Deposition was obtained in a prior case, *Wright v. Weatherproof Technologies*, 13-13264-WGY,

which Plaintiffs alleged involved similarly situated employees who filed suit against WTI

asserting substantially identical claims to the ones asserted by them in this case. Plaintiffs did not

depose Honeywell in this case.  Neither party otherwise made or requested to make any formal

argument to the Court regarding the motion to strike. Moreover, post-hearing, Plaintiffs did not

file an opposition to the motion to strike.

For the reasons set forth below, I am, for the most part, allowing the motion to strike.

This is not a decision I make lightly and is not being made simply because the Plaintiffs

neglected to file an opposition. I am allowing the motion because I agree with the Defendant that

the evidence in the record cited by the Plaintiffs too often fails to support their factual assertions. For example, Plaintiffs assert that Bernard Honeywell ("Honeywell") "fielded complaints from the technicians about not being paid for performing paperwork at home." *Pls' Disputed Facts and Additional Factual Assertions*, at ¶76.  However, Honeywell's testimony was that plaintiffs in the *Wright* case complained to him that they doing paperwork at home—he did not testify that they complained they were not being paid for the doing that paperwork.  *See* Honeywell Deposition*,* at p. 128 lines 1-5. Additionally, Plaintiffs state that "Honeywell was aware that the technicians were not getting paid for their administrative work done at home." *Pls' Disputed Facts and Additional Factual Assertions,* at ¶77. While one of the deposition lines cited could be read to support this factual assertion, the others do not.  Honeywell Dep. P. 133 l. 22-24; P. 134 l. 1-19; p. 145 l. 1-5; p. 153 l. 1-7; p. 181 l. 11-16.  Plaintiffs assert that "[a]nother labor intensive part of the at-home paperwork were organizing, captioning and uploading photos—especially for a TremCare, which could have 500 photos. Submitting photos took approximately 30 minutes. If the photos were related to a patch-and repair job, or smaller work, the photos took approximately 15 minutes." *Pls. Additional Facts,* at ¶80.  However, what Honeywell testified about was how long it would take to *caption* the photos, not submit and organize them from home. In fact, Honeywell repeatedly stated that this process should have been completed at the jobsite— pushed by Plaintiffs' counsel, he estimated it could take approximately 30 minutes if the employee took this work home to complete. Honeywell Dep. P. 144 l.10-24' p. 145 l. 1-24; p. 146 l. 1-20; p. 152 l. 6-11.

Plaintiffs also misstate the testimony of Edward Kolasienski ("Kolasienski").  Plaintiffs state that "WTI expects its technicians, particularly Mr. Andrews and Mr. Rezendes to complete paperwork every single night." *Pls' Disputed Facts and Additional Factual Assertions*, at ¶100.

However, what Kolasienski actually testified was that TremCare's Q&A's and OLI uploads were to be done every day with no exceptions, including by the Plaintiffs.  They were supposed to complete this task by the end of shift, *if* they could not, they were to upload it at home *and charge their time to that number of the job they had been working on. See Pls' Opp.* at *Ex. 2* (Kolasienski Deposition), at p. 44.  There are more examples which I will not take the time to point out.  Instead, I am granting WTI's motion to the extent that it seeks to strike the additional facts asserted by the Plaintiffs set forth in *Pls' Disputed Facts and Additional Factual Assertions,*, at ¶¶75-125, pp. 25-32.

Putting aside whether the Plaintiffs have accurately characterized Honeywell's deposition testimony, there is a more fundamental problem with their reliance thereon.  Honeywell's deposition was taken in October 2014 for use in a case filed at the end of 2013. From the deposition excerpts, it appears that Honeywell left Weatherproofing's employ sometime in 2014. The Federal Rules of Civil Procedure allow depositions taken in earlier actions to be used in a later action so long as the later action involves "the same subject matter between the same parties, or their representatives or successors in interest." *See Fed.R.Civ.P.* 32(a)(8).  The key is whether an adversary with the same motive to cross-examine the deponent was present when the deposition was taken in the earlier action. However, even if I were to assume that the prerequisites to using Honeywell's deposition from the earlier action have been met, Plaintiffs have failed to establish that his testimony is *relevant to this case.* That is, they have failed to establish that the time frame to which Honeywell was testifying in the earlier action is the same timeframe as in this case or that the testimony made by Honeywell regarding the specific plaintiffs in that case pertains to Andrews and Rezendes. Therefore, I am striking the Honeywell Deposition for all purposes.

As for WTI's factual assertions which Plaintiffs contend are in dispute, Plaintiffs have made objections to WTI's material statement of facts and these objections are unsupported by citation to the record or don't actually contradict the factual assertions made by the Defendant. For example, WTI asserted that it had not received any reports or complaints regarding off-the-clock or unreported work or denial of overtime in Massachusetts through this an employee hotline it set up with a third party vendor. *See Def's Statement of Undisputed Material Facts* (Docket No. 38), at ¶20. Plaintiffs dispute this factual assertion stating that "WTI has received countless complaints from its Massachusetts technicians regarding off the clock work, including a separate lawsuit on the issue and has many witnesses (current and former technicians) who intend to testify to the opposite." *Pls' Disputed Facts and Additional Factual Assertions*, at ¶23. In support of this statement, Plaintiffs cite to *numerous* pages of the Kolasienski Deposition. Ignoring the fact that Plaintiffs do not cite to any record evidence to support their contention that they have "many witnesses (current and former technicians) who intent to testify to the opposite," *none* of the Kolasienski Deposition testimony cited by the Plaintiffs disputes WTI's assertion that the employee hotline received no complaints.  Moreover, while *some* of the testimony relates to complaints which Kolasienski received from the Plaintiffs, *most of this testimony has nothing to do with employee complaints.* Again, there are more examples which I will not take the time to mention. Plaintiffs also cite generally to their responses to interrogatories without specifying which response supports their assertion/objection: It is not the Court's responsibility to review the interrogatory responses in their entirety to determine which support Plaintiffs' objections. In many instances, Plaintiffs "dispute" WTI's asserted facts by interjecting irrelevant editorial comments. I have accepted as true factual assertions made by WTI which Plaintiffs have not properly disputed.

<u>Plaintiffs' Employment</u>

Plaintiffs work as roofing technicians, inspecting and repairing WTI's clients' roofing systems. They do not work with each other and do not have personal knowledge of each other's hours.  Andrews began working for WTI in 2006 and, according to the complaint, Rezendes started working for WTI in 2003. Both Plaintiffs are supervised by Kolasienski. Kolasienski has been their supervisor for approximately three years.  For the rest of the relevant period, Plaintiffs' were supervised by Honeywell: He supervised Andrews from the beginning of his employment in 2006, and supervised Rezendes starting in 2011.

Plaintiffs do not work at a facility operated or maintained by WTI and perform their work at client sites throughout Massachusetts, and sometimes in other states. Kolasienski does not observe Plaintiffs' day-to-day activities and instead communicates with each Plaintiff by telephone approximately once per day and visits each Plaintiff on a job site approximately once per week. WTI does not monitor any work Plaintiffs perform at home.

<u>WTI's Policies and Related Training</u>

The WTI Time Reporting and Expense Policy ("Time Reporting Policy") requires all employees to: (i) "maintain an accurate daily record of all hours worked," (ii) "record and report all hours worked," without exception; and (iii) review weekly time and expense reports "to verify that they have submitted all of their hours worked . . . and that their time record and expense reporting is complete and accurate."  The Time Reporting Policy further provides: "Hours worked is all time in a day that is worked and should be recorded accurately from start time to stop time. This includes all responsibilities of the job, i.e., paperwork, material handling, meetings, etc."  An employee's failure to comply with the policy may result in discipline. A separate policy requires prior approval for overtime hours.

WTI conducted a training in Rhode Island on October 21, 2013 at which the Time Reporting Policy was distributed. Plaintiffs and Kolasienski attended the Rhode Island training. In October 2013, Each Plaintiff read and understood the Time Reporting Policy and agreed to comply with it. Each Plaintiff acknowledged that the Time Reporting Policy requires him to report his time and expenses accurately and timely, and that in reporting his time, he is certifying that it is complete and correct.

Honeywell also attended the training and presented a portion of it. This training also reviewed the job codes that technicians use to enter their time. These codes were provided to technicians in a "flip book" to make the time-entry process easy and efficient.   The flip book included labor codes for work billed to WTI's customers, in addition to codes for non-billable tasks, such as administrative and training tasks.  WTI has retained a third party vendor to receive employee complaints through an anonymous hotline and distributes information regarding the hotline number.

<u>Plaintiffs' Time Entry</u>

Plaintiffs call into the Datria telephone system ("Datria") every day to report the time They worked that day. For each project, Plaintiffs report the project code, labor code, amount of work time (in fifteen minute increments), the amount of travel time, and materials. Based on these phone calls, a "Weekly Labor and Expense Report" is generated, The Plaintiffs receive a copy of this report once per week by email. Plaintiffs review these reports each week and are aware that they may report any problems (e.g., inaccurate entries) to Tracy Jackson, Tremco's Project Administrator, Northeast Region. Kolasienski also reviews these reports and approves Plaintiffs' time.  Plaintiffs are aware they can report pay or other policy violations to representatives of human resources, but neither Plaintiff reported any issues regarding alleged

"off-the-clock" work to human resources.  Plaintiffs did complain verbally and were told they don't get paid for doing paperwork.

Plaintiffs did not send any emails to anyone else, including each other, complaining about not getting paid for unreported time. Until Plaintiffs filed their lawsuit in 2015, Rezendes maintained a day planner that captured all of the time he reported to WTI and did not include any time that he did not report.  After beginning this litigation, however, he began recording and making notes of time that he had not reported to WTI. Outside the context of this litigation, Rezendes never provided a copy of these records to WTI or attempted to report the time to WTI.

<u>Plaintiffs Were Paid For All Hours They Reported</u>

WTI paid Andrews and Rezendes for all of the time that they reported in Datria and WTI did not alter any of the time they reported. Plaintiffs contend, however, that the time they spent completing paperwork could not be reported in Datria and therefore, they were not reimbursed for that time. Plaintiffs did not work a set schedule-- their hours varied from week to week. According to their Weekly Labor and Expense Reports, in some weeks they reported significantly fewer than forty hours and in other weeks they reported more than forty hours. WTI did not pay Plaintiffs for any time worked which was not entered into the system.  Andrews complained to Kolasienski on at least one occasion that he was not being compensated for work he had to do from home. Rezendes made the same complaint to Kolasienski on more than one occasion.

<u>Andrews' Pricing Work</u>

Andrews prepares pricing estimates for sales representative Tom Foley ("Foley"). Foley is not Andrews' supervisor and does not review the time Andrews enters.

Andrews testified that, on average, he spends approximately ten to fifteen minutes preparing each bid. [1] Andrews produced only one email in which Foley asked Andrews to prepare an estimate the same day and does not contend there are others.  Andrews has used the "Review Potential Jobs" and "Sales Support" codes in the Datria flip book to enter time worked and acknowledges that he knows how to use them. Andrews contends that WTI discouraged him from using these codes to enter time spent on paperwork.

Andrews kept notes of the time he spent preparing estimates for Foley during 2016 and did not provide the notes to WTI, although he provided them to his attorney. Andrews acknowledged that he did not attempt to report any of the time he noted in his private records, which added up to 54 minutes.  Kolasienski is not aware of the time that Andrews spends preparing estimates for Foley and was not copied or otherwise notified with respect to the time Andrews spends preparing estimates.

<u>WTI Instructed Plaintiffs How to Record Their Time</u>

Kolasienski told Plaintiffs they should always get paid for any time they work per company policy, including:

    a. Calling in their time to Datria;

    b. Filling out paperwork at home;

    c. Organizing and uploading photographs of job sites;

    d. Preparing pricing estimates for sales representatives;

    e. Organizing supplies stored at home;

    f. Loading trucks at home;

    g. Communicating with colleagues about projects; and

---

[1] This is contrary to the allegations in the Complaint in which Andrews alleges that he spends 45-60 minutes preparing *each* bid.

h. Attending ToolBox Talks training sessions.

Kolasienski believed Plaintiff Andrews was complying with his instructions that he should record time for all work performed. Andrews does not recall any conversation with any supervisor who told him to perform work without reporting it in WTI's timekeeping system. However, he was told that certain work had to be completed each night and he did not always have a code to get paid for doing the pricing. WTI instructed Rezendes to report all administrative work he performed away from a job site to a service number, and no one ever told him not to record the time.  Kolasienski sent the Plaintiffs an e-mail instructing them not to use the labor code "413,"[2] for pricing without prior managerial approval.

With respect to Andrews' pricing work, Dan Arthur ("Arthur"), Regional Manager, told Andrews that if the pricing estimates take a material amount of time to prepare, he should "add some extra money to the job so if it does get approved, you can get paid an extra hour or two, whatever it takes." Andrews never followed Arthur's instructions. Arthur also instructed Plaintiffs to complete their paperwork at home, at night, while watching television. Honeywell told Andrews to follow Arthur's instructions or to let them know if he needed a number for purposes of recording any such time. Kolasienski told Andrews the same thing.

<u>Prevailing Wage</u>

A "patch and repair" work order involves relatively minor repairs in response to customer requests, including repairs such as fixing a leak. Even when not required, WTI pays prevailing wage for patch and repair work performed for governmental entities in Massachusetts. TremCare work results from a service agreement between WTI and a building owner wherein the owner pays a lump sum for certain services done on a regular schedule, including services such as

---

[2] There is some ambiguity as to whether Plaintiffs were instructed not to use code "413," which is the code for pricing for reviewing potential jobs, or code "412," which is the sales support pricing code.

inspections. **"TremCare"** work can also include repairs.  "Warranty inspections" are inspections

in accordance with a warranty that is provided at an additional cost in the original contract price

for a roofing system. WTI charges the building owner for the warranty at the time of purchase,

but does not charge for the later inspections and leak repairs, known as "warranty adjustment

work."

   Approximately half of Rezendes' work is comprised of TremCare work, and the other

half is warranty work. A small percentage of Rezendes' work is patch and repair work, for which

he acknowledges he receives the prevailing wage rate. Most of Andrews' jobs are patch and

repair.  Andrews knows that the wage for patch and repair in certain towns is the "prevailing

wage," but doesn't know what the rate of pay actually is. For that reason, he does not know

whether Tremco is paying him the correct wage for patch and repair jobs. However, he believes

he was paid his normally hourly wage for most of the public works buildings he worked on.

   Andrews received the prevailing wage rate of $62 to $65 per hour on patch and repair

jobs in 2015. Andrews' typical hourly rate, when not working on jobs subject to prevailing rate

requirements, is $26. Significantly, Plaintiffs do not know for which jobs WTI has requested or

received a prevailing wage rate sheet.  Nor can they identify any jobs for which WTI received a

prevailing wage rate sheet that they were not paid the prevailing wage rate. However, Plaintiffs

believe that they worked on "dozens" of public work jobs for which they were payed only their

standard hourly rate.  Plaintiffs testified that they had never seen a prevailing wage sheet posted

at any site at which they had performed work.  Each Plaintiff produced an exhibit with his

answers to interrogatories relating to his prevailing rate claims, but neither plaintiff knows how

the list was created, except that his attorney created it.  WTI has reviewed all of the jobs included

in each Plaintiff's exhibit to his Answers to Interrogatories for which WTI did not already

12

produce documents in the course of this litigation. WTI confirmed that it did not receive from a prevailing wage sheet from any governmental client pertaining to any work performed by WTI since March 2012. The documents produced by the parties do not include any prevailing wage rate sheets on projects for which Plaintiffs did not receive the prevailing wage, or any emails between Plaintiffs and anyone else, including each other, complaining about not getting paid for off-the-clock time worked.

## **Discussion**

### Whether WTI is entitled to Summary Judgment on: Plaintiffs' Wage Claims because it did not have Actual or Constructive knowledge of all Uncompensated Work

Plaintiffs allege in their complaint that WTI violated the FLSA, MWA and the MFMAW by failing to pay them for earned and/or overtime wages. More specifically, they allege that they were completing required paperwork at home for which they were not compensated in violation of the MWA.  Also, completing the work from home occasionally caused their work time to exceed forty hours in a given week and they were not compensated for overtime in violation of the MWA and FLSA. They further alleged that WTI was aware that they were working off-the-clock and that it was not compensating them for such time.

While Plaintiffs have asserted claims for violation of state and federal wage laws, neither party has made any substantive argument regarding Plaintiffs' claims for violation of the MWA or the MFMAW. On the contrary, their sole focus is whether WTI has violated the overtime provisions of the FLSA because it knew or should have known that Plaintiffs were working off-the-clock and not being compensated for such time. In its memorandum in support of its motion for summary judgment, WTI states that the same "knew or should have known" standard applies to Plaintiffs' state and federal wage act claims, and therefore, I can rely on FLSA overtime claims in deciding Plaintiffs' claims under the MWA and MFMAW. *See Def's Mem. Of L. in*

*Supp. Of Mot. For Sum. J.* (Docket No. 37), at p. 10 n. 6.  Plaintiffs do not contend to the contrary.  Since the only issue before the Court with respect to these claims is whether WTI knew or should have known that Plaintiffs were working off the clock and not being compensated, like the parties, I will assume that the FLSA standard for failing to pay overtime wages applies to Plaintiffs' state law claims for failure to pay earned and/or overtime wages.

The FLSA requires employers to pay all covered employees at least one and a half times their regular rate of pay for hours worked in excess of forty hours per week. *See* 29 U.S.C. § 207(a)(1).[3] An employer violates the FLSA by failing to compensate employees for overtime work if the employer suffered or permitted such work, that is, where the failure to compensate for such work was done with the knowledge of the employer. Knowledge may be actual or constructive, and, thus, an employer is liable for its employees' unpaid overtime work if it knew or should have known that the employees were working overtime.  If an "employer knows or has reason to believe" that an employee is working over forty hours per week, the time is "working time" and the employee must be paid overtime, even if the employer did not request the employee work excess hours and even if the employer prohibited the employee from working overtime. *Craig v. Bridges Bros. Trucking LLC*, 823 F.3d 382 (6th Cir. 2016)(citing 29 C.F.R. 785.11). If an employer has no actual or constructive knowledge of overtime work and the employee fails to notify the employer or deliberately prevents the employer from learning of the overtime work, no violation has occurred.  *See Forrester v. Roth's I.G.A. Foodliner, Inc.*. 646 F.2d 413, 414 (9th Cir. 1981).

---

[3] The MWA mandates that "[e]very person having employees in his service shall pay...such employee the wages earned by him...." Mass. Gen. L. ch. 149 § 148. The MFMAW "mandates overtime pay for hours worked over 40 per week at one and a half times the employee's regular rate of pay." *Cavallaro v. UMass Memorial Healthcare, Inc.*, 678 F.3d 1, 9 (1st Cir.2012); *see also* Mass. Gen. Laws ch. 151, § 1A.

In determining whether the employer has constructive knowledge that an employee is working off-the-clock, the question is "whether [the employer] should have known about the [employee's] unpaid work. Unlike actual knowledge, this issue must be considered 'in view of the employer's duty ... to inquire into the conditions prevailing in his business.' The constructive knowledge inquiry is not limited to facts—it is intertwined with an analysis of the employer's duty to inquire into what workers are doing, and what reasonable diligence the employer must perform to ensure that unauthorized hours are not being worked.'" *Rueli v. Baystate Health, Inc.*, 835 F.3d 53, 63 (1st Cir. 2016)(internal citation and citation to quoted case omitted).

It is the employee's burden to show, by a preponderance of the evidence, that his employer had actual or constructive knowledge that he worked overtime. *Pforr v. Food Lion, Inc.*, 851 F.2d 106 (4th Cir. 1988); *Porcal v. Ciuffo*, No. 10-cv-40016-TSH, 2013 WL 3989668 (D.Mass. Aug. 1, 2013). Moreover, "[i]t is not enough for a plaintiff to establish his employer's knowledge for a few incidents of off-the-clock work, and upon this claim of knowledge, submit a record of ….years of alleged off-the-clock work. A necessary part of plaintiffs' burden of proof [is] to show [their employer] 'suffered' or allowed them to work off –the-clock hours … such proof may be made by proof of a pattern or practice of employer acquiescence in such work, but plaintiffs may not merely estimate off-the-clock hours worked without presenting a showing that [their employer] 'suffered' that work." *Id.* at 109.

To ensure compliance with its provisions, the FLSA requires that an employer keep and preserve records of its employees' wages and hours in addition to records concerning its employment practices. 29 U.S.C. § 211(c); 29 C.F.R. § 516.2. An employee who proves that the relevant records kept by the employer are unreliable is held to a less stringent standard of proof in establishing damages for unpaid overtime compensation under the FLSA. *Anderson v. Mt.*

*Clemens Pottery Co.*, 328 U.S. 680, 687–88, 66 S.Ct. 1187 (1946), *superseded on other grounds by* The Portal-to-Portal Act, 29 U.S.C. §251 *et seq.*[4] "[W]here the employer's records are inaccurate or inadequate ... an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Herman v. Palo Group Foster Home, Inc.*, 183 F.3d 468, 472 (6th Cir.1999)(internal citation marks omitted)(quoting *Anderson,* 328 U.S. at 687)**.** "[I]t is possible for a plaintiff to meet this burden through estimates based on his own recollection." *Kuebel v. Black &Decker, Inc.*, 643 F.3d 352, 362 (2d Cir. 2011); *Tomei v. Corix Utils. (US), Inc.,* No. 07-CV-11928-DPW, 2009 WL 2982775 at * 15(D.Mass. Sep. 14, 2009)(federal courts interpreting FLSA have consistently held employee may recover unpaid overtime wages even where only evidence of hours worked is employee's personal recollection).  The employer then has the burden "to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate." *Herman*, 183 F.3d at 472 (internal citation marks omitted)(quoting *Anderson*, 328 U.S. at 687-88)).  Where "an employer establishes a reasonable process for an employee to report uncompensated work time, the employer is not liable for non-payment if the employee fails to follow the established process.  In such circumstances the relevant standard transforms from 'I know that the employee was working' into 'I know the employee was

---

[4] There is a similar provision under Massachusetts law. *See*  Mass. Gen. L. ch. 151, § 15 ("Every employer shall keep a true and accurate record of … the hours worked each day and each week by each employee…."). Neither party suggests that the FLSA law differs from Massachusetts law when analyzing whether an employer has complied with its obligation to maintain accurate records of the hours worked by its employees.

working and not reporting his time.'" *Craig*, 823 F.3d at 389 (citation to quoted case omitted). An employer may still be liable under such circumstances where the employer "prevents the employee from reporting overtime or is otherwise notified of the employees' unreported work." *Id.* (citation to quoted case omitted).

On the record before me, making all reasonable inferences in favor of the Plaintiffs, I find that they have established that there are genuine questions of material fact as to whether they have performed both straight time and overtime work for which they were not compensated.  At the same time, I do not find that Plaintiffs have met their burden to establish that WTI had actual knowledge that they were working off-the-clock and not being compensated, either for straight time and/or overtime work.  While there is scant evidence that WTI had constructive knowledge of Plaintiffs' off-the-clock work, I find that there is a genuine issue of material fact as to whether WTI should have known that Plaintiffs were not being compensated for such time. I so find because regardless of WTI's policy that all time is compensable, there are genuine issues of material fact as to whether WTI exercised reasonable diligence to ensure that unauthorized hours were not being worked.  More specifically, there are genuine issues of material fact as to whether it *should* have known that Plaintiffs were not being compensated for off-the-clock work given the nature of its business, including that its employees worked off-site, *i.e.,* were known to complete paperwork and administrative duties from home, and the comments Plaintiffs made to their supervisors that they were not being paid for performing such work.[5]

---

[5] Plaintiffs' supervisors testified that some or all of such work should have been completed on-site and that Plaintiffs should have been aware as to how to be compensated for such time using Datria.  However, at summary judgment, all reasonable inferences must be made in favor of the non-moving party.

<u>Whether WTI is entitled to Summary Judgment on: Plaintiffs' Prevailing Wage Act Claims</u>

"The Massachusetts prevailing wage law 'govern[s] the setting and payment of wages on public works projects constructed by the State, by municipalities, or by public authorities.' Under the statute, and '[p]rior to awarding a contract for the construction of public works, [a] public official or public body shall submit to the commissioner a list of the jobs upon which ... laborers are to be employed, and shall request the commissioner to determine the rate of wages to be paid on each job.' Once the rate of wages has been set, 'no contractor or subcontractor shall pay less than the rates so established,'" *i.e.*, the prevailing wages … An employer that pays less than the prevailing rate of wages violates the statute." *O'Leary v. New Hampshire Boring, Inc.*, 176 F. Supp. 3d 4, 9 (D. Mass. 2016)(internal citations and citation to quoted authorities omitted). The MWAPW "is designed 'to achieve parity between the wages of workers engaged in public construction projects and workers in the rest of the construction industry.' Under this law, the 'rate per hour of the wages' paid to 'mechanics and apprentices, teamsters, chauffeurs and laborers in the construction of public works' may not be less than 'the rate or rates of wages' determined by the commissioner of the Department of Labor Standards (department). The commissioner determines the minimum rate by preparing a classification of "the jobs usually performed on various types of public works' by 'mechanics and apprentices, teamsters, chauffeurs and laborers' employed in such construction.  The commissioner is authorized to 'revise such classification from time to time, as he may deem advisable.'" *Niles v. Huntington Controls, Inc.*, 92 Mass. App. Ct. 15, -- N.E.--  (2017)(internal citations and citation to quoted authorities omitted).  The term "construction," includes "additions to or alterations of public works." Mass.Gen. L. ch. 149, §27D.  The expanded definition of what constitutes an "addition"

or "alteration" contained in the statute suggests that the Legislature intended that the terms be construed broadly. *Niles*, 92 Mass.App.Ct. at *5.

The onus is on the public body/municipality to set the prevailing wage rate not the private employer. Where there has been no request by the public body/municipality to set a prevailing wage rate for contracted work the MPWA does not apply[6]. *See McGrath v. Act, Inc.*, 2008 Mass.App.Div. 257 (2008); *Cf. Andrews v. First Student, Inc.,* No. 10-11053-RGS, 2011 WL 3794046 (D.Mass. Aug. 26, 2011)(where municipality fails to request and obtain prevailing wage rate schedule from the Massachusetts Department of Labor and Workforce Development's Division of Occupational Safety before awarding contract under Mass.Gen.L. ch. 71, §7A, employer is not obligated to pay prevailing wage).   It is not necessary for the Court to address whether the WTI misclassified the work performed by the Plaintiffs in order to avoid paying them prevailing wages on public works contracts. Simply put, there is no evidence in the record to support a finding that either Plaintiff was not paid prevailing wages on any job to which *for which a prevailing wage was set*.  Summary Judgment shall enter for WTI on this claim.

<u>Whether WTI is entitled to Summary Judgment on Plaintiffs' Common Law Claims for Breach of the Covenant of Good Faith and Fair Dealing, Breach of Contract, and Unjust Enrichment</u>

*<u>Breach of the Covenant of Good Faith and Fair Dealing</u>*

Plaintiffs allege that WTI's refusal to pay them their earned wages constitutes a violation of the covenant of good faith and fair dealing which is implied in cases of at will employment. WTI asserts that it is entitled to summary judgment on this claim because under Massachusetts law, such a claim lies only where the employee has been terminated.  Plaintiffs failed to oppose WTI's motion for summary judgment on this claim. The motion is granted.

---

[6] There are statutory exceptions requiring payment of the prevailing wage even if the rate has not been properly set. *See* Mass.Gen.L. ch. 149, §§ 27F-27H. Those exceptions do not apply in this case.

### *Breach of Contract*

WTI asserts that Plaintiffs' breach of contract claim must fail because they are at-will employees without express employment contracts and they have failed to establish that there was an implied contract between the parties.  Plaintiffs' response is that recent case law confirms that an employee who brings statutory wage act claims may also pursue a common law breach of contract claim. *See Mansfield v. Pitney Bowes, Inc.*, No. 12-10131-DC, 2013 WL 947191 (D.Mass. Mar. 12, 2013)(MWA does not preempt all common law claims; under circumstances of that case, employee could choose to either proceed under MWA or file breach of contract claim).  Assuming for purposes of this discussion that under the circumstances of this case Plaintiffs' breach of contract claim would not be preempted, their claim fails for the simple reason that they have not established (or event attempted to establish) that they had an express or implied employment contract with WTI. Summary judgment shall enter for WTI on this claim.

### *Unjust Enrichment*

WTI asserts that Plaintiffs' unjust enrichment claim fails because they have a statutory remedy at law, *i.e.*, their state and federal wage act claims. I agree. *See DaSliva v. Border Transfer of MA, Inc.*, 227 F.Supp.3d 154 (D.Mass. 2017)(party with adequate remedy at law cannot claim unjust enrichment under Massachusetts law; The MWA is available as a statutory remedy sufficient to bar unjust enrichment claim). Summary judgment shall enter for WTI on this claim.

## **Conclusion**

Defendant's Motion For Summary Judgment (Docket No. 36) is ***granted***, in part, and ***denied***, in part as provide in this Memorandum of Decision and Order.

/s/ ***Timothy S. Hillman***
TIMOTHY S. HILLMAN
UNITED STATES DISTRICT JUDGE